UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CBDE PUBLIC SCHOOLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 11-10874-DPW |
| | ) |
| MASSACHUSETTS BUREAU OF SPECIAL | ) |
| EDUCATION APPEALS, and JANE DOE and | ) |
| JOHN DOE, as Parents and Next | ) |
| Friends of Jill Doe, a Minor, | ) |
| | ) |
| Defendants. | ) |

_____

| | |
|---|---|
| JILL DOE, JOHN DOE, and JANE DOE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 12-11082-DPW |
| | ) |
| CBDE PUBLIC SCHOOLS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

MEMORANDUM AND ORDER
September 27, 2012

These two cases stem from the sexual abuse[1] of Jill Doe[2] by

Stephen Roe, a CBDE[3] employee, and subsequent efforts by Jane and

_____

[1] I note that the BSEA Hearing Officer's decision reported that former CBDE employee Stephen Roe pled guilty "to statutory rape of a child and related offenses," in connection with this matter. The complaint in a comparison case, Civil Action No. 11-11593-DPW, however, alleges that he pled guilty to indecent assault of a minor.

[2] I address each party as a Doe plaintiff or Roe defendant to protect the anonymity of those involved.

[3] CBDE is a pseudonym for the school which Jill Doe attended. This is the pseudonym used by the Bureau of Special Education Appeals ("BSEA") hearing officer in the underlying administrative proceeding.

John Doe to secure proper educational services to meet Jill Doe's
needs.  They illustrate the opportunities for needless
proliferation of litigation initiatives in the context of the
Individuals with Disabilities Education Act (the "IDEA")
disputes, even when the particular piece of litigation presents
no meaningful likelihood of success.[4]

In the first case, Civil Action No. 11-10874, CBDE filed
suit against the Bureau of Special Educational Appeals ("BSEA")
and the Doe plaintiffs seeking to enjoin the BSEA's fact-finding
hearing on a number of the Does' damage claims.  The BSEA and Doe
plaintiffs moved to dismiss CBDE's action for lack of
jurisdiction.  I declined to enjoin the hearing and after the
hearing was concluded CBDE stipulated to its dismissal.  Having
concluded that courts lack jurisdiction over such litigation,
rather than simply enclosing the stipulation, I will grant the
BSEA's and Doe plaintiffs' motions to dismiss.

In the second case, Civil Action No. 12-11082, the Doe
plaintiffs seek attorneys' fees under the IDEA arising from the
completed BSEA proceeding.  CBDE filed a motion to dismiss and/or

---

[4] The dispute has generated another related case before me
in which the Does have brought a civil rights action against the
various actors in this dispute.  *Doe* v. *Roe*, Civ. No. 11-11593-
DPW.  The Plaintiffs have been allowed to amend their pleadings a
third - and final - time in that case in order to frame that case
for meaningful motion to dismiss practice this fall.  Counsel for
the Does expressly stated at a hearing in these matters
yesterday, that Civ. No. 11-11593 does not include an appeal on
the merits from the BSEA decision.

for summary judgment.  Because, as I explain more fully below, the Doe plaintiffs were not prevailing parties before the BSEA, they are not entitled to attorneys' fees, and I will grant CBDE's motion.

## I.  BACKGROUND

A. Facts

Jill Doe, a student at CBDE High School, was harassed and sexually assaulted by her soccer coach, Stephen Roe, beginning in September 2008 and lasting through March 2009.  From November 2008 through March 2009, Jill exhibited and developed a number of behavioral problems, including emotional outbursts, insubordination and failure to attend class, difficulty completing assignments, depression, and substance abuse.  She also began to cut and burn herself.

In February 2009, Jane and John Doe, the parents of Jill Doe, approached CBDE High School and asked for help designing a program to address Jill's needs in light of her outbursts in class and other conduct.  The School recommended that the parents file a Child in Need of Services petition with the Juvenile Court to begin the process.  Meanwhile, Jill remained enrolled in her regular classes.

From February 25, 2009 through April 7, 2010, the CBDE Child Study Team (the group serving as the gateway to special education services under the IDEA) discussed Jill's case at least 13 times.

-3-

The Team recommended only general education accommodations for Jill, even after she reported being assaulted by Stephen Roe.

Jane Doe met with CBDE administrators on March 9, 2009 and reported Stephen Roe's sexual assault of Jill Doe.  At that meeting, CBDE recommended that Jill be enrolled in an anger management program to help with her outbursts.  Jane Doe told CBDE that she did not think that Jill was making progress, and sought assistance and services from the School on multiple occasions from March 2009 through January 2010.

On January 18, 2010, Jill was admitted to a hospital, and on January 21, 2010 was diagnosed with PTSD, mood disorder NOS, R/O bipolar, and poly-substance abuse, with probable emerging borderline personality disorder.  On February 3, 2010, Jill was discharged and returned to CBDE High School.

Jane Doe met with Pat Roe to discuss what services were available to help Jill.  Pat Roe told Jane that no services were available to Jill, but that she could go to a guidance counselor during the day if she had issues.  Jane followed up with written requests on March 18 and April 6, 2010, that CBDE High School evaluate Jill for eligibility for special education services pursuant to the IDEA.

The School again recommended that Jane Doe file a Child in Need of Services petition with the Juvenile Court, which the Does filed in late March 2010.  The Juvenile Court declared Jill a

Child in Need of Services.

On April 7, 2010, Jill was hospitalized after exhibiting symptoms of PTSD.  She was transferred to an acute treatment unit for stabilization and treatment.  In light of Jill's emotional problems, poly-substance abuse, and propensity to run away, the Does requested that CBDE High School place Jill in a residential therapeutic school.  On May 13, 2010, the School denied the Does' request.

On May 27, 2010, the School determined that Jill was eligible for special education and other services.  Jill returned to the acute treatment unit for a 45-day residential placement where she received an extended evaluation.  At the end of the evaluation, the Does again requested that the School place Jill in a residential therapeutic school, which the School denied.

On July 8, 2010, CBDE High School held an IEP meeting and determined that the School would fund a residential educational placement for Jill at another school.  On July 14, 2010, the Does accepted the proposed IEP.  In June, 2011, the Does requested an alternative placement for Jill because they felt Jill was not making progress.  On June 15, 2011, an IEP meeting was held, and the School denied the Does' request.

B.   <u>Proceedings Before the BSEA</u>

   1.  *Initial Proceedings*

On April 23, 2010, after Jill had been hospitalized, John

-5-

and Jane Doe requested a hearing with the BSEA seeking a new educational placement for their daughter Jill Doe, costs associated with that placement, and compensatory damages.  As noted above, on July 8, 2010, CBDE held an IEP meeting and determined that CBDE would fund a residential educational placement for Jill at another school.  On July 14, 2010, the Does accepted the proposed IEP.

As a result of the Does' acceptance of the proposed IEP, CBDE moved to dismiss the BSEA proceeding on the grounds that the educational claims had been resolved and the remaining claims were not within the BSEA's jurisdiction.  On February 14, 2011, the BSEA Hearing Officer held a telephonic hearing, after which he dismissed the Parents' claims insofar as they sought substantive educational services but retained jurisdiction to hold a hearing to determine whether CBDE violated the Student's rights under the "child find" provisions of the IDEA,[5] any other

---

[5]   The IDEA's "child find" provision states:

All children with disabilities residing in the State, . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are

currently receiving needed special education and related services.

20 U.S.C. § 1412(a)(3); see also 34 C.F.R. § 300.11(a)(1)(i).

provision of the IDEA, or § 504.  *In re CBDE Pub. Schs.*, No. 10-6854, Ruling, at 1 (Bureau Special Educ. App. Feb. 24, 2011). That jurisdiction did not include any claims for damages arising under Title IX, state tort claims, or any other law outside the purview of the IDEA.  *See id.* at 10–11.

The hearing officer filed his written determination of the motion to dismiss on February 24, 2011.  He found that "the Parents have alleged sufficient facts to make out a claim for relief under the IDEA's 'child find' protections" and "for relief under Section 504."  *Id.* at 6–7.  Because the Parents did not seek compensation under the IDEA or § 504, the Hearing Officer next considered whether the BSEA retained jurisdiction over the proceedings in order to hold a hearing on the IDEA and § 504 claims insofar as they may be relevant to any subsequent judicial action.  *Id.* at 7.  The Hearing Officer determined that in order for the Parents to fulfill the exhaustion requirements of the IDEA, 20 U.S.C. § 1415(l), and bring suit under the ADA or § 504 in a court of law, the Parents must exhaust the due process proceeding in the BSEA.  *Id.* at 8–9 ("I simply find it not possible to distinguish the analysis in [the existing case law[6]]

---

[6]   The Hearing Officer relied upon the First Circuit's decision in *Frazier* v. *Fairhaven School Committee*, 276 F.3d 52 (1st Cir. 2002), my decision in *Bowden* v. *Dever*, No. 00-12308, 2002 WL 472293 (D. Mass. Mar. 20, 2002), and Judge Zobel's decision in *City of Boston* v. *Bureau of Special Education Appeals*, No. 06-11703, 2008 WL 2066989 (D. Mass. Apr. 30, 2008).

. . . where in each case the parents were required to return to the BSEA for fact finding on their damages claims.  I therefore am constrained to find that I must conduct an administrative hearing and make findings of fact regarding Parents' damages claims under the IDEA and Section 504.").  The Hearing Officer noted that the purpose of the IDEA's exhaustion requirement was to "provide assistance to the courts through the specialized knowledge and expertise of the BSEA Hearing Officers" in the limited scope of "what implicates a student's right to special education." *Id.* at 12.  To that end, the Hearing Officer found that "fact finding related to alleged IDEA or Section 504 violations and any consequent educational harm falls squarely within the Hearing Officer's role and expertise." *Id.* at 13.

CBDE filed a second motion to dismiss, arguing that the BSEA lacked jurisdiction to resolve the Parents' surviving claims, that the Parents had adequately exhausted their administrative remedies, and, for the first time, that exemptions to the exhaustion requirement apply.  The Hearing Officer denied this second motion to dismiss on April 28, 2011.  *In re CBDE Pub. Schs.*, No. 10-6854, Ruling, at 8 (Bureau Special Educ. App. Apr. 28, 2011).  The Hearing Officer concluded that the Parents' administrative proceeding had not been exhausted and that "were [he] to allow CBDE's Second Motion to Dismiss and if Parents were

then to proceed to federal court on their monetary damages
claims, the dispute would likely be returned to the BSEA for
failure to exhaust administrative remedies and, specifically, for
the BSEA to conduct fact finding." *Id.* at 7.

    2.   *CBDE Seeks an Injunction*

On May 16, 2011, CBDE filed Civil Action No. 11-10874
seeking to enjoin the BSEA hearing.  CBDE also requested a
determination "that the Does have exhausted their administrative
remedies to the extent possible given their hearing request or,
alternatively, that exceptions to exhaustion apply."  CBDE
promptly filed a motion for injunctive relief, to which the
Parents and the BSEA responded with cross-motions to dismiss for
lack of jurisdiction.  On June 2, 2011, I denied CBDE's request
for a preliminary injunction and scheduled a hearing on the
defendants' motions to dismiss.

I held a hearing on July 21, 2011 and took the motions under
advisement.  I address them below.  In the meantime, I allowed
the BSEA to hold hearings on the matter before it.  After those
hearings were concluded, CBDE stipulated to the dismissal of this
case.

    3.   *BSEA Holds a Series of Hearings and Makes Findings*

The BSEA held hearings on September 12, October 24-25,
November 28-29, and December 1, 2011, and the hearing officer
issued his written decision on March 19, 2012.

The hearing officer began his written decision by noting that because all of the Does' substantive educational claims had been dismissed before the hearing, "[t]he only remaining claims pertain to monetary damages, which the [BSEA] has no authority to award . . . ." *In re CBDE Pub. Schs.*, No. 10-6854, Ruling, at 2 (Bureau Special Educ. App. Mar. 19, 2012).  Nonetheless, the hearing officer reiterated his earlier conclusion that he was "required to make findings relevant to these claims in order to allow [the Does] to exhaust their administrative remedies prior to their seeking monetary damages in state or federal court" under *Frazier* v. Fairhaven School Committee, 275 F.3d 52 (1st Cir. 2002).  *Id.*  The hearing officer explicitly noted that his decision was being "issued *solely* for the purpose of making findings relevant to [the Does'] *monetary damage claims*." *Id.* (emphasis added).

The hearing officer found that CBDE violated child find in March 2009, *id.* at 44, and that the Does had "satisfied the gross misjudgment standard regarding CBDE's child find violation, thereby meeting the intentionality standards that the First Circuit would likely use for compensatory damages under Section 504." *Id.* at 49.  Though he found that Jill Doe had experienced educational harm, the hearing officer could not make findings concerning the extent of the harm because he thought such a finding would be speculative. *Id.* at 56.  Finally, the hearing

officer reiterated that he could not order relief "[b]ecause all substantive educational issues have previously been dismissed, leaving only the issue of monetary damages," over which the BSEA did not have jurisdiction.  Thus, the hearing officer reconfirmed that his "Decision includes only the above findings and no relief is ordered." *Id.* at 61.

    *4.   The Does File for Fees*

On June 18, 2012, the Does filed Civil Action No. 12-11082, seeking attorneys' fees and costs under the IDEA, 20 U.S.C. § 1415(i)(3)(B) for the BSEA proceeding.  On August 19, 2012, CBDE filed a Motion to Dismiss and/or for Summary Judgment on the grounds that the Does were not prevailing parties under the statute.

## II.   CIVIL ACTION NO. 11-10874: DEFENDANTS' MOTIONS TO DISMISS

In this action, CBDE filed suit against the BSEA and the Does to enjoin the BSEA's 2011 fact-finding hearings on the remaining damages claims.  The BSEA and the Does filed motions to dismiss CBDE's action for lack of jurisdiction.  For the following reasons, I will grant the Defendants' motions to dismiss the suit.

## A.   Standard of Review

CBDE, as plaintiff, bears the burden of proving that this court has subject matter jurisdiction over its actions.  *Aversa* v. *United States*, 99 F.3d 1200, 1209 (1st Cir. 1996).

B.   Analysis

The Defendants claimed this court lacks subject matter jurisdiction to review any BSEA action until the BSEA has rendered a final decision on the matter, and therefore CBDE's complaint must be dismissed.  The action before the BSEA, the Defendants further contend, had not been exhausted at the time CBDE filed its complaint because the BSEA retained jurisdiction to consider the Parents' IDEA- and § 504-related damages claims specifically for the purpose of exhausting those claims pursuant to 20 U.S.C. § 1415(l), in order to permit suit in federal or state court.  Had the Does filed suit at this stage, the Defendants maintain, I would have had to dismiss the case as unexhausted and require them to return to the BSEA.

CBDE disagreed, arguing that the BSEA had no jurisdiction to conduct fact finding when no educational issues remained unresolved, and, in any event, the BSEA rendered a final decision when it dismissed the Parents' substantive educational claims. In the alternative, CBDE argues that it is entitled to an exemption from the IDEA's exhaustion requirement.  I address each argument in turn.

1.   *Exhaustion under the IDEA*

The Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, imposes certain obligations on states receiving federal grants for providing disabled children with "a free

-12-

appropriate public education" ("FAPE").  *See* 20 U.S.C. § 1414(d).
Under the IDEA, parents and educators must jointly develop and
sign an IEP, 20 U.S.C. §§ 1401(11) and 1414(d), which "is the
central mechanism" by which a school ensures that its students
receive FAPE.  *Polera* v. *Bd. of Educ. of the Newburgh Enlarged
Sch. Dist.*, 288 F.3d 478, 482 (2d Cir. 2002).

The IDEA provides parents with a formal complaint process
"with respect to any matter relating to the identification,
evaluation, or educational placement of the child, or the
provision of a free appropriate public education to such child."
20 U.S.C. § 1415(b)(6).  "The scope of the due process hearing is
broad, encompassing 'complaints with respect to any matter
relating to the identification, evaluation, or educational
placement of the child, or the provision of a free appropriate
public education to such child.'"  *Rose* v. *Yeaw*, 214 F.3d 206,
210 (1st Cir. 2000) (quoting 20 U.S.C. § 1415(b)(6)).  In
Massachusetts, the BSEA is the administrative agency tasked with
conducting an impartial due process hearing regarding any such
complaint.  603 Mass. Code Regs. § 28.08.  Following the
administrative process, "any party aggrieved by the findings and
decision made . . ., shall have the right to bring a civil action
with respect to the complaint presented pursuant to this section"
in state or federal court.  20 U.S.C. § 1415(i)(2)(A).

However, before any such action may be brought in a court of

-13-

law, the party seeking review must exhaust all administrative
procedures under the IDEA:

> Nothing in this chapter shall be construed to restrict
> or limit the rights, procedures, and remedies available
> under the Constitution, the Americans with Disabilities
> Act of 1990 [42 U.S.C.A. § 12101 *et seq.*], title V of
> the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 *et
> seq.*], or other Federal laws protecting the rights of
> children with disabilities, except that before the
> filing of a civil action under such laws seeking relief
> that is also available under this subchapter, the
> procedures under subsections (f) and (g) shall be
> exhausted to the same extent as would be required had
> the action been brought under this subchapter.

20 U.S.C. § 1415(l) (brackets in original).  This exhaustion
requirement applies to actions brought under the IDEA, the ADA,
§ 504, or any § 1983 claim based upon violations of a student's
IDEA rights.  *See Weber* v. *Cranston Sch. Comm.*, 212 F.3d 41,
51–52 (1st Cir. 2000) (requiring exhaustion for § 504 claims that
fall under the scope of the IDEA); *Rose*, 214 F.3d at 210
(recognizing that exhaustion "applies even when the suit is
brought pursuant to a different statute so long as the party is
seeking relief that is available under subchapter II of IDEA");
*Bowden* v. *Dever*, No. 00-12308, 2002 WL 472293, at *4–5 & n.6 (D.
Mass. Mar. 20, 2002) (recognizing that IDEA-related ADA claims
must be exhausted).  A district court, therefore, has no subject
matter jurisdiction over such a case until this exhaustion
requirement has been met.  *Polera*, 288 F.3d at 483.

   There are limited exceptions to the exhaustion requirement:
"Exhaustion may not be required where the pursuit of

administrative remedies would be futile or inadequate; waste resources, and work severe or irreparable harm on the litigant; or when issues raised involve purely legal questions." *Pihl* v. *Mass. Dep't of Educ.*, 9 F.3d 184, 190 (1st Cir. 1993). The party seeking exemption bears the burden of establishing that it applies. *Rose*, 214 F.3d at 210.

The First Circuit's decision in *Frazier* v. *Fairhaven School Committee*, 276 F.3d 52 (1st Cir. 2002), and its progeny have considered in detail the extent of the IDEA exhaustion requirement. In *Frazier*, the First Circuit "h[e]ld that plaintiffs who bring an IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court." *Id.* at 64. This exhaustion requirement is not excused if the BSEA cannot grant the relief sought, such as when the claims seek only money damages, the claim is infirm, or the student has already graduated from high school. *Id.* at 62, 64 ("[A] party must exhaust a mandatory administrative process even if the precise form of relief sought is not available in the administrative venue.").

In so ruling, the First Circuit emphasized that "Congress unmistakably evinced its intent to require exhaustion of *procedures* available under the IDEA" not merely exhaustion of

remedies.  *Id.* at 62 (emphasis in original); *see also Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & County of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000) ("[O]ur primary concern in determining whether a plaintiff must utilize the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy itself."); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7th Cir. 1996) ("We read 'relief available' to mean relief for the events, condition, or consequences of which the person complaints, not necessarily relief of the kind the person prefers.").  The *procedural* exhaustion, *Frazier* concluded,

> is beneficial regardless of whether the administrative process offers the specific form of remediation sought by a particular plaintiff.  After all, the administrative process facilitates the compilation of a fully developed record by a factfinder versed in the educational needs of disabled children — and that record is an invaluable resource for a state or federal court required to adjudicate a subsequent civil action covering the same terrain.

*Frazier*, 276 F.3d at 61; *see also Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989) (observing that exhaustion "enables the [educational] agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy").  *Frazier* identified in particular the unique expertise

-16-

that the BSEA hearing officers possessed in assessing a school's treatment of disabled students and the effect of that expertise on compiling a record and evaluating IDEA-based claims.  *See* 276 F.3d at 61 ("[T]he problems attendant to the evaluation and education of those with special needs are highly ramified and demand the best available expertise."), & 62 ("[T]he administrative process, at the very least, should facilitate the development of a useful record (and, thus, assist in the informed disposition of any subsequent litigation).").

In *Bowden* v. *Dever*, I observed that "*Frazier* holds that a plaintiff must exhaust administrative procedures with respect to *any claim* that asserts a violation to the right to a FAPE."  2002 WL 472293, at *3 (emphasis added).  I further noted that *Frazier* suggests that a claim asserted under non-IDEA law may still be subject to the exhaustion requirement if the IDEA procedures *either* can provide some meaningful relief *or a superior record on which the court could make its determination*."  *Id.* (emphasis added).  I concluded that "any aspect of the school's treatment that interferes with the provision of a free, appropriate public education is within the scope of the IDEA's administrative procedures," whether it is educational services or other related services (such as custodial care).  *Id.* at *4 (finding that allegations that physical and psychological abuse interfered with a right to FAPE constitute charges within the purview of the IDEA

procedures).  Thus, so long as claims are in some way based on the denial of FAPE, exhaustion is mandatory.  *Id.* at *5; *see also Cudjoe* v. *Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1066 (10th Cir. 2002) (finding that exhaustion is required "for claims whose 'genesis and manifestation . . . are educational'" (quoting *Charlie F.*, 98 F.3d at 993)).

In *City of Boston* v. *Bureau of Special Education Appeals*, No. 06-11703, 2008 WL 2066989, at *4 (D. Mass. Apr. 30, 2008), Judge Zobel likewise interpreted *Frazier* broadly to compel exhaustion if a "claim is sufficiently related to the public education of disabled child."  Accordingly, Judge Zobel concluded that a claim that a school failed to identify a child as disabled fell within the scope of IDEA's mandatory exhaustion provision because the IDEA "requires a state agency receiving federal assistance to provide an opportunity for any party to present a complaint 'with respect to *any matter* relating to the *identification, evaluation, or educational placement of the child*, or the provision of a free appropriate public education to such child.'"  *Id.* at *6 (quoting 20 U.S.C. § 1415(b)(6)) (emphasis in original).

The facts underlying *City of Boston* are particularly relevant to the case before me here.  In *City of Boston*, the parents alleged that the school had failed to identify, evaluate, and properly accommodate their child's disability.  *Id.* at *1.

The BSEA had resolved the substantive educational claims in the parents' favor but retained jurisdiction over their claims for money damages. *Id.* Before the BSEA addressed the damages claims, the City of Boston appealed the resolution of the substantive claims in federal court, and the parents moved for dismissal on the grounds that the decision was not final due to the outstanding claims for compensatory damages. *Id.* The parents then withdrew their complaint from the BSEA and counterclaimed for damages in the federal court action. *Id.* Judge Zobel found that "the crux of the Parents' counterclaims is that their son suffered from physical and mental conditions that caused him to experience academic difficulty, and that Boston failed to provide the services that they believe were appropriate to allow him to succeed . . . despite his disability." *Id.* at *4. Such claims, Judge Zobel concluded, required exhaustion despite the fact that the BSEA had reached a decision on the substantive educational claims; the parents were therefore precluded from bringing any counterclaims for monetary damages. *Id.* at *7; *cf. Cudjoe*, 297 F.3d at 1068 (concluding that exhaustion under the IDEA was not required because the plaintiff-student's injuries were "severe physical, and completely non-educational, injuries").

CBDE argued that *Frazier*, *Bowden*, and *City of Boston* are distinguishable from the instant case because the educational

issues in those cases had not been resolved, as they are here, and the parents sought to avoid the BSEA process entirely.  As is evident from my summary of these cases, that characterization of the cases is too narrow.  It is true that in *Frazier* and *Bowden* the students-plaintiffs sought to bypass the BSEA process, and they did not raise any substantive educational issues to be resolved.  *See Frazier*, 276 F3d at 59; *Bowden*, 2002 WL 472293, at *1-2.  The student in *Frazier* only sought monetary damages, and still the First Circuit dismissed the case for lack of exhaustion of her claims.  *Frazier*, 276 F.3d at 64; *see also Bowden*, 2002 WL 472293, at *5.  If CBDE's contention is that the BSEA must have an active substantive educational issue before it to have jurisdiction over any attendant claims for monetary damages, then federal court jurisdiction would have laid in both *Frazier* and *Bowden* because neither case involved an existing BSEA hearing. Moreover, the *student-defendant* in *City of Boston* had pursued the BSEA process and received a favorable resolution of his educational claims.  *City of Boston*, 2008 WL 2066989, at *1. Nevertheless, when he brought a counterclaim in federal court, it was dismissed for lack of jurisdiction in a very similar procedural posture to the one that the Does find themselves in before me here.[7]

---

[7] The BSEA itself has operated under this interpretation of *Frazier*.  In at least two cases, the BSEA has retained jurisdiction — and scheduled a hearing — to conduct fact finding

Thus, like the parents' claims for monetary damages in *City of Boston*, the Does' claims here were not exhausted when CBDE filed its complaint.   The BSEA had not yet closed the record or issued a final decision on the Parents' claims under the IDEA or § 504.   *See* Bureau Special Educ. App. R. XIII(A) ("The written findings of fact and decision of fact and decision of the Hearing

---

regarding damages claims in the absence of any substantive educational claim, but has declined to make determinations of liability for monetary damages on any claims.   *See Jane v. Lexington Pub. Schs.*, No. 08-3060, Ruling on Mot. to Determine Scope of Hr'g, at 8 (Bureau Special Educ. App. Aug. 19, 2008) (considering parents' claims for monetary damages arising from the school's behavioral program for their disabled daughter); *In re Mashpee Pub. Schs.*, Nos. 08-0998, 08-1316, 08-1317, Rulings on Mot. to Consol., Mot. to Determine Scope of Findings, & Mot. to Cont. Hr'g, at 13 (Bureau of Special Educ. App. June 16, 2008) (consolidating three related cases regarding disabled students with satisfactory IEPs bringing claims under § 504, the ADA, Title IX, and state civil rights and torts claims arising from the abuse of one of the students, as witnessed by the other two students).   While the defendant in the *Lexington Public Schools* case opposed the fact-finding hearing on jurisdictional grounds, the *Mashpee Public Schools* defendant agreed that the BSEA had jurisdiction to make factual findings and determinations of violations in a damages suit, but only with respect to ADA and § 504 claims.   However, in both cases, the BSEA hearing officers, interpreting *Frazier* and its progeny, "err[ed] on the side of an expanded scope of fact finding (which can be disregarded by a court to the extent that fact finding has extended too far) rather than risk the development of an incomplete factual record and the need for a second fact-finding hearing before the BSEA." *See Mashpee Pub. Schs.*, June 16, 2008, at 9, *aff'd* Ruling on Mot. for Reconsideration (Bureau Special Educ. App. June 27, 2008). Additionally, another hearing officer determined that the BSEA had jurisdiction to make factual findings with respect to § 1983 and § 504 claims requiring exhaustion but granted summary judgment on other grounds.   *See Student* v. *Bourne Pub. Schs.*, No. 02-3804, Ruling on Mot. for Summ. J., at 6 (Bureau of Special Educ. App. Sept. 18, 2002) (concluding that the statute of limitations had expired with respect to the underlying alleged abuse).

Officer, along with the notification of the procedures to be followed with respect to appeal and enforcement of the decision, shall be sent to the parties and their representatives, if any."); Bureau Special Educ. App. R. X(E) ("A decision will be issued within twenty-five (25) calendar days after the close of the record.").  Consequently, had the Does — rather than CBDE — brought their claims for monetary damages to this court at this stage in the BSEA proceedings, I would have been be compelled under *Frazier* to dismiss their case for lack of jurisdiction.

CBDE argues that the same result is not required when it is the school that brings the action prematurely.  The IDEA and *Frazier* suggest that to allow such an asymetrical result would be counter to the purposes of the IDEA exhaustion requirement. *City of Boston* illustrates the potential for a perverse result in such a ruling.  Just as a student-plaintiff cannot "bypass the administrative procedures merely by crafting her complaint to seek relief that educational authorities are powerless to grant," *Frazier*, 276 F.3d at 63, neither can a school-plaintiff avoid those same procedures by racing to the courthouse.

As *Frazier* observed, the educational expertise of the BSEA and its capacity to collect and evaluate a complicated educational record are two important benefits of the IDEA exhaustion requirement.  276 F.3d at 60-61.  *Frazier* also recognized that the BSEA has "the power to enter a finding that a

school system violated a student's rights," even when it cannot
award the monetary remedy sought by the complainants. *Id.* at 64
n.5 (citing *In re Brockton Pub. Schs.*, No. 00-2572, 6 Mass. Spec.
Educ. Rep. 17 (Bureau Special Educ. App. 2000)); *see also Israel*
v. *Monson Pub. Schs.*, No. 10-5064, Ruling, at 8 (Bureau Special
Educ. App. Aug. 23, 2010) ("[T]he IDEA and conforming
Massachusetts law give the BSEA authority to determine the
respective rights and obligations of publicly funded agencies and
parents/students in the implementation of federal and state
special education statutes."). Thus, the expertise of the BSEA
is "particularly beneficial to the courts," not only in crafting
appropriate educational services, but also "[w]here the ultimate
question is whether a disabled child was denied his/her right to
an equal education" by not being identified or evaluated properly
under the IDEA's "child find" provision. *See Bowden*, 2002 WL
472293, at *4. The purposes of the exhaustion requirement,
therefore, are furthered by permitting the BSEA to consider the
Does' damages claims within the limited scope permitted by the
IDEA.

    In the alternative, CBDE's asserts that it is entitled to an
exemption from the exhaustion requirement. That argument,
however, is without merit. CBDE's futility argument is

foreclosed by *Frazier*, and its concerns regarding prejudice[8] and additional litigation costs are no more sufficient here than in any other mandatory administrative proceeding under the IDEA (or other similar administrative statute).  Any factual findings made by the BSEA are subject to review by the reviewing court.  *See Pihl*, 9 F.3d at 191 (stating that the IDEA "empowers courts sitting in review of administrative complaints to supplement the hearing record with additional evidence at trial" (citing 20 U.S.C. § 1415(e)(2))).  Before the reviewing court, CBDE and any other defendant may also offer evidence, take depositions, impeach prior witnesses, and coincidentally challenge the factual findings of the BSEA hearing officer.  However, the BSEA's record will provide a fundamental and useful compilation of facts and initial legal analysis by an educational expert with respect to the educational claims.  Consequently, neither the record nor the

---

[8]  In the Complaint, CBDE alleged that permitting the hearing to go forward would prejudice CBDE by (1) depriving it of a jury determination of the facts, the protections of the Federal Rules of Evidence, and prevent liberal discovery such as depositions; (2) forcing it to incur additional costs of defense in part because CBDE's insurers do not defend administrative proceedings; (3) depriv[ing] it of the benefits of resolving the educational service issues; and (4) subject[ing] it to a potential award of attorneys' costs should the BSEA find facts in the Does' favor.  CBDE also alleged that the hearing would prejudice the town and individuals who are not parties to the BSEA proceeding but could be named as defendants in a subsequent lawsuit.

analysis would be, as CBDE contends, inherently wasteful.[9]

At the time CBDE filed its complaint, the Does had not exhausted their claims before the BSEA, and, therefore, I lacked jurisdiction to review or enjoin the BSEA's proceedings.  I therefore am compelled to grant Defendants' motions to dismiss.

2.   *Writ of Prohibition*

CBDE restyled its contention by requesting a writ of prohibition under 28 U.S.C. § 1651 enjoining the BSEA from further action in this case.  During an early hearing in this case, in which I denied CBDE's request for a preliminary injunction, I suggested that CBDE's suit could be more aptly characterized as seeking a writ of prohibition.  CBDE seized on that suggestion and sought to amend its complaint to include a cause of action under 28 U.S.C. § 1651.  However, because I have determined that the BSEA would not exceed the bounds of its jurisdiction in holding a factfinding hearing on the limited issue of whether CBDE violated the Student's IDEA rights and

---

[9]  The Defendants also argue that CBDE is estopped from claiming that the BSEA lacks jurisdiction over the Does' monetary damages claims because CBDE agreed to bifurcate the Does' case. CBDE contends that its agreement to bifurcate the issues and resolve the educational needs of the Jill first does not now waive the jurisdictional argument.  Because I am satisfied that the BSEA properly retained jurisdiction over the Does' remaining claims — thereby preventing jurisdiction from lying in this court until the BSEA's final decision — I need not resolve this issue. Moreover, I am reluctant to suggest that by agreeing to accelerate consideration of a student's ongoing and pressing educational needs a school may suffer some adverse penalty or waiver in the broader litigation.

whether any damages are due her under that statute, a writ of prohibition would be improper here.  *In re Rice*, 155 U.S. 396, 402-03 (1894) (holding that a writ of prohibition should issue "as a matter of right" only "[w]here it appears that the court whose action is sought to be prohibited has clearly no jurisdiction of the cause originally, or of some collateral matter arising therein").  Consequently, I decline to permit the amendment of the complaint or to enter an order for a writ of prohibition.

### III.  CIVIL ACTION NO. 12-11082: CBDE'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

In this action, the Does seek attorneys' fees under the IDEA as prevailing parties before the BSEA.  I find that the Does were not prevailing parties before the BSEA and therefore are not entitled to their attorneys' fees.  Consequently, I will grant CBDE's Motion to Dismiss and/or for Summary Judgment.

A.  Standard of Review

CBDE's motion is styled as a motion to dismiss and/or for summary judgment.  A motion to dismiss is appropriate and may be granted if the pleadings fail to set forth a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Under either standard, CBDE's motion is appropriate, as noted

below, because the Does are not a prevailing party.[10]

B.   Analysis

Under the IDEA, only a "prevailing party" is entitled to an award of attorneys' fees.  20 U.S.C. § 1415(i)(3)(B)(i) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability.").  Under guiding Supreme Court's precedent, a party is considered to have prevailed if she obtained a "material alteration of the legal relationship of the parties" along with some "judicial *imprimatur* on the change." *Buckhannon Bd. & Care Home, Inc.* v. *West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001) (emphasis in original); *Doe* v. *Boston Pub. Schs.*, 358 F.3d 20, 29-30 (1st Cir. 2004) (holding that *Buckhannon* applies to awards of attorneys' fees under the IDEA).  Judgment on the merits or court-ordered consent decrees are such material alternatives sufficient to show the necessary judicial imprimatur.  *Buckhannon*, 532 U.S. at 605.

_____

[10] I note that the defendant, which had not filed an answer before filing its motion to dismiss, did not move to dismiss on the basis of the statute of limitations.  In a separate opinion issued today in an unrelated case, I have concluded that the statute of limitations for IDEA attorneys' fees litigation is 30 days.  *B.D.* v. *Georgetown Pub. Sch. Dist.*, Civil No. 11-10692-DPW (Sept. 27, 2012).  Consequently, if not waived by the defendant, the statute of limitations would provide an alternative grounds for dismissing this case, which was filed some 90 days after completion of the administrative proceedings at issue.

The Does' Complaint contends that the BSEA hearing officer's decision "materially changed the legal relationship between the parties in that the BSEA made findings of fact that CBDE violated its Child find obligations," and therefore the Does argue they are a prevailing party entitled to their attorneys' fees under the IDEA.   They are incorrect.

By the time the BSEA hearings were held, all of the Does' substantive educational complaints had been dismissed.   The hearing officer repeatedly emphasized that he was only making findings of fact to allow the Does to exhaust their administrative remedies and thus bring suit in federal court.   And, to make it crystalline, the hearing officer noted in his written decision that it "includes only the above findings and *no relief is ordered*." (emphasis added).   Administrative findings of fact - even findings of fact entitled to substantial deference - in the absence of any form of legal relief, do not constitute binding directives resulting in a material change in the <u>legal</u> relationship between the parties sufficient to make the Does prevailing parties under *Buckhannon*.   Thus, the Does fail to state a cognizable claim for attorneys' fees under the IDEA.   *See Doe*, 358 F.2d at 30.

## IV. CONCLUSION

The parties and their counsel here have consumed their own resources and imposed on their adversaries the obligation to do likewise in the pursuit of needless litigation regarding

collateral aspects of the core question: how to deliver an appropriate education to Jill Doe in the context of her alleged sexual abuse by a school official.  The First Circuit in *Frazier* made clear that administrative procedures must be fully exhausted before judicial review is undertaken, yet the school system heedlessly sought to pretermit the completion of administrative proceedings through Civil No. 11-10874.  For their part, the parents sought attorneys' fees for the BSEA administrative proceedings, despite the fact that they obtained at most some favorable language that gave them no enforceable substantive relief, a circumstance in which attorneys' fees were plainly unavailable.  The parties would have done better to conserve their resources and apply them to constructive resolution of the underlying dispute.

In any event, for the reasons stated more fully above, in Civil Action No. 11-10874, I GRANT the Defendants' motions to dismiss (Dkt. Nos. 18 & 19); and in Civil Action No. 12-11082, I GRANT CBDE's motion to dismiss (Dkt. No. 4).


**/s/ Douglas P. Woodlock**
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE